UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X   Index No.:  1:20-CV-0143 (MAD/ATB)
JANE DOE (first and last name being fictitious), an
infant, BY HER MOTHER AND NATURAL
GUARDIAN, MADELINE GURNY,

                                            **COMPLAINT**

                Plaintiffs,

      -against-

                                       Plaintiffs Demands a
NEXXT ENTERPRISES, LLC, individually and                  Trial by Jury
d/b/a MCDONALD'S, JAYLYN PINNEY,
individually, and MATTHEW POTTER,
individually,

                Defendants.
-------------------------------------------------------------X

Plaintiffs, by and through her attorneys, Phillips & Associates, PLLC, upon information and belief, complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiffs complain pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §2000e et. seq. ("Title VII") and the New York State Executive Law, seeking damages to redress the injuries Plaintiff JANE DOE has suffered as a result of being harassed and discriminated against by her employer on the basis of her sex/gender, together with sexual harassment, creating a hostile work environment, retaliation, and constructive discharge.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §2000e et. seq.; 28 U.S.C. §1331, §1343 and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claims occurred within the Northern District of the State of New York. 28 U.S.C. §1391(b).

5. On or about January 8, 2019, Plaintiffs filed a charge of discrimination which was dual filed with the Equal Employment Opportunity Commission ("EEOC").

6. On or about November 18, 2019, Plaintiffs received a Notice of Right to Sue letter from the EEOC.

7. This action is being brought within ninety (90) days of said Notice of Right to Sue letter.

## PARTIES

8. Plaintiff JANE DOE (first and last name being fictitious) (hereinafter also referred to as "J.D.") is a 16-year old female resident of the State of New York, County of Ulster.

9. Plaintiff MADELINE GURNY (hereinafter also referred to as "GURNY") was and is the mother and natural guardian of Plaintiff J.D.

10. At all times material, Defendant NEXXT ENTERPRISES, LLC, individually and d/b/a MCDONALD'S (hereinafter also referred to as "MCDONALD'S") was and is a domestic limited liability company duly existing under the laws of the State of New York.

11. At all times material, Defendant JAYLYN PINNEY (hereinafter also referred to as "PINNEY") was and is a "Manager" at Defendant MCDONALD'S.

12. At all times material, Defendant PINNEY was Plaintiff J.D.'s supervisor and/or had supervisory authority over Plaintiff.

13. At all times material, Defendant MATTHEW POTTER (hereinafter also referred to as "POTTER") was and is the Owner of Defendant MCDONALD'S.

14. At all times material, Defendant POTTER was Plaintiff J.D.'s supervisor and/or had supervisory authority over Plaintiff.

15. At all times material, Defendant MCDONALD'S, Defendant PINNEY, and Defendant POTTER are hereinafter collectively referred to as "Defendants."

16. At all times material, Plaintiff J.D. was an employee of Defendants.

## MATERIAL FACTS

17. In or around February 2018, Plaintiff J.D. turned fourteen (14) years old and became authorized to work in New York State, when she received her New York State working papers.

18. On or about April 5, 2018, Plaintiff J.D. began working for Defendants as a "Crew Member" at the 47-49 N. Main St., Ellenville, NY 12428 restaurant.

19. Plaintiff J.D. was very excited to start working for Defendants because it was her first job and Defendant MCDONALD'S offers many benefits to employees, such as college tuition assistance. Moreover, as noted in Defendants' marketing campaigns, Defendant MCDONALD'S is "Committed to being America's best first job.[1]"

20. However, shortly after Plaintiff J.D. started working for Defendants, Defendant PINNEY, who was approximately 27 years old at the time Plaintiff began working for Defendants, began making sexually inappropriate comments about female customers to Plaintiff J.D.

21. By way of example, Defendant PINNEY regularly said to Plaintiff J.D. and her coworkers, **"I'd do that,"** **"Her ass is crazy,"** and **"I'll eat her so good."** Plaintiff J.D. was very uncomfortable with Defendant PINNEY's comments but did not complain because it was her first job and he was her supervisor.

---

[1] https://www.youtube.com/watch?v=_QP9Q_Fa-BA

22. In or around the beginning of July 2018, at Defendants' drive-thru window, and in the presence of a number of Defendants' employees, **Defendant PINNEY placed his hand on the small of Plaintiff J.D.'s back**. Plaintiff J.D. immediately turned around and moved away from Defendant PINNEY.

23. In or around the end of July 2018, Defendants' "General Manager," George (last name currently unknown) told Plaintiff J.D. to get apples and "Gogurts" from Defendants' walk-in freezer. When Plaintiff J.D. entered the freezer, Defendant PINNEY and Defendants' employee, Aneysha (last name currently unknown), were already there. Plaintiff J.D. took the apples and asked Defendant PINNEY to hand her the Gogurts. When he did so, Defendant PINNEY asked, "Do you need cranberries?" Plaintiff J.D. replied, "No" and went to leave the freezer. However, Defendant PINNEY then said, in a demanding tone, "I think you need cranberries. Follow me."

24. Defendant PINNEY exited the freezer and walked into Defendants' condiment closet to get the cranberries. Although she did not need the cranberries, Plaintiff J.D. followed Defendant PINNEY because he was her supervisor and demanded that she follow him. However, Plaintiff J.D. stopped short of fully entering the condiment closet and looked at her cellphone. Defendant PINNEY then handed Plaintiff J.D. the cranberries, **grabbed the collar of her shirt, pulled her close to him, and kissed her on the lips**. Plaintiff J.D. immediately pushed Defendant PINNEY away. Thereafter, Defendant PINNEY said, "**God I wish you were older.**"

25. Later that same day, Defendant PINNEY threatened Plaintiff J.D. and told her, "Make sure you don't tell anybody about what happened earlier." Even worse, before her shift was over,

4

Defendant PINNEY **asked Plaintiff J.D. to go to the condiment closet with him again**. Plaintiff J.D. declined fearing further sexual advances.

26. Subsequently, from the date of his assault until Plaintiff J.D.'s constructive discharge, Defendant PINNEY **repeatedly threatened Plaintiff J.D.** In fact, Defendant PINNEY told Plaintiff J.D., **"Make sure you don't fucking tell anyone," "This stays between us,"** and **"Don't tell anyone about what happened."**

27. Plaintiff J.D. reasonably feared retaliation by Defendant PINNEY.

28. Thereafter, Plaintiff J.D. did her best to avoid Defendant PINNEY when they were scheduled to work the same shift. To that end, on a number of occasions, Plaintiff J.D. actually called out sick on days that she knew Defendant PINNEY was scheduled to work the same shift as her. Likewise, if they were at work together, Plaintiff J.D. moved away from Defendant PINNEY whenever he was physically close to her.

29. Soon, Plaintiff J.D.'s coworkers began noticing that she was uncomfortable around Defendant PINNEY and asked if she was OK. Plaintiff J.D. routinely told her coworkers that she was fine because she reasonably feared retaliation and/or physical violence.

30. In or around mid-August 2018, Defendant PINNEY again threatened Plaintiff J.D. and said **"People are asking what happened to you. Don't fucking say anything!"**

31. On or about September 20, 2018, near the end of Plaintiff J.D.'s shift, Defendants' "Manager," Danielle (last name currently unknown), who has a daughter around the same age as Plaintiff J.D., asked her, "What happened between you and [Defendant PINNEY]?" Plaintiff J.D. broke down in tears and told Danielle that Defendant PINNEY had kissed her and that she did not tell anyone because he repeatedly threatened her. Shortly thereafter, George asked Plaintiff

5

J.D., "Why didn't you say anything to me?" Plaintiff J.D. explained to George that she was scared because Defendant PINNEY had threatened her.

32. At the end of Plaintiff J.D.'s shift, her father arrived to pick her up. Plaintiff J.D. was still visibly upset and told her father what Defendant PINNEY had done to her. Thereafter, Plaintiff J.D.'s father told George that Plaintiff J.D. would not be returning to work for Defendants.

33. Later that evening, Plaintiff J.D. reported Defendant PINNEY's assault to the police.

34. On or about September 21, 2018. Defendant PINNEY was arrested.

35. Defendants' actions were intended to create a hostile work environment that no reasonable person would tolerate.

36. Defendants failed to provide Plaintiff J.D. with a work environment free from sexual harassment.

37. Defendants knew, or should have known, about Defendant PINNEY's sexual harassment and/or sexual harassing tendencies.

38. Defendant PINNEY's threats were intended to, and did, interfere with Plaintiff J.D.'s protected right to complain.

39. On or about September 20, 2018, Plaintiff J.D. was constructively discharged.

40. Defendants would not have harassed Plaintiff J.D. but for her sex/gender.

41. Defendants would not have retaliated against Plaintiff J.D. but for her sex/gender.

42. Defendants' actions were intended to, and did, constructively discharge Plaintiff J.D.

43. As a result of Defendants' actions, Plaintiff J.D. felt, and continues to feel, extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

44. As a result of Defendants' discriminatory and intolerable treatment, Plaintiff J.D. suffered, and continues to suffer, severe emotional distress and physical ailments.

45. As a result of the acts and conduct complained of herein, Plaintiff J.D. has suffered, and will continue to suffer, the future loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, loss of enjoyment of life, and other non-pecuniary losses.

46. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff J.D. demands punitive damages as against all Defendants, jointly and severally.

47. **Defendant POTTER, as the Owner of Defendant MCDONALD'S, is individually and personally liable to Plaintiff J.D. for discrimination under New York State Law as the owner of the Corporate Defendant.**

## AS A FIRST CAUSE OF ACTION
## UNDER TITLE VII
## DISCRIMINATION
## (AGAINST DEFENDANT MCDONALD'S ONLY)

48. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

49. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et Seq., as amended, for relief based upon the unlawful employment practices of Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's sex/gender, together with sexual harassment, creating a hostile work environment, retaliation, and constructive discharge.

## AS A SECOND CAUSE OF ACTION
## UNDER TITLE VII
## <u>RETALIATION</u>
## (AGAINST DEFENDANT MCDONALD'S ONLY)

50. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

51. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2(a) provides that it shall be an unlawful employment practice for an employer:

> "(1) to … discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

52. Defendants engaged in an unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions, or privileges of employment because of her opposition to the unlawful employment practices of Defendants, including, but not limited to, constructively discharging Plaintiff's employment.

## AS A THIRD CAUSE OF ACTION
## UNDER STATE LAW
## <u>DISCRIMINATION</u>

53. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

54. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's … sex … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

55. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiffs because of her sex, together with sexual harassment, creating a hostile work environment, and constructive discharge.

56. Plaintiffs hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

**AS A FOURTH CAUSE OF ACTION
UNDER STATE LAW
<u>RETALIATION</u>**

57. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

58. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person before he has opposed any practices forbidden under this article."

59. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating and otherwise discriminating against Plaintiffs because of her opposition to Defendants' unlawful employment practices.

**AS A FIFTH CAUSE OF ACTION
UNDER STATE LAW
<u>AIDING AND ABETTING</u>**

60. Plaintiffs repeat, reiterate, and reallege each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

61. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

62. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**WHEREFORE**, Plaintiffs respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII and the New York State Executive Law on the basis of Plaintiff J.D.'s sex/gender, together with sexual harassment, creating a hostile work environment, retaliation, and constructive discharge;

B. Awarding damages to the Plaintiffs, for all lost wages and benefits, past and future, back pay and front pay and to otherwise make Plaintiffs whole for any losses suffered as a result of such unlawful employment practice;

C. Awarding Plaintiffs compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation;

D. Awarding Plaintiffs punitive damages;

E. Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

**JURY DEMAND**

Plaintiffs request a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiffs demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, Punitive Damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
      February 10, 2020

                              **PHILLIPS & ASSOCIATES, PLLC**
                              *Attorneys for Plaintiff*

By: _____
                              Bryan S. Arce, Esq.
                              45 Broadway, Suite 620
                              New York, New York 10006
                              (212) 248-7431